Slip Op. 13-154

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALEJANDRO SANTOS and ALEJANDRO SANTOS, CHB,<br>　　　　　　　　　　　　Defendants. | Before: Richard W. Goldberg, Senior Judge<br>Court No. 13-00025 |

**OPINION AND ORDER**

[Plaintiff's motion for default judgment is granted.]

Dated: December 26, 2013

*Stephen C. Tosini*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for plaintiff.  With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director.  Of counsel on the brief was *Stephanie L. Ciechanowski*, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of Laredo, TX.

　　　　Goldberg, Senior Judge: On January 11, 2013, the United States (the "Government" or "United States") commenced an action against Defendants Alejandro Santos and Alejandro Santos, CHB (collectively, "Santos") to recover civil penalties assessed under section 641 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1641(d)(2)(A) (2006).[1]  Summons & Compl., ECF Nos. 1–2.  The United States now moves for entry of default judgment.  Mot. for Entry of Default J., ECF No. 8 ("Default J. Mot.").  Because the Clerk has entered default against Santos and the allegations in the Complaint support the United States' entitlement to relief, the court grants the Government's motion and enters judgment against Santos in the amount of $30,000.

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2006 edition.

## SUBJECT MATTER JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1582(1) and will review the Government's claim for a penalty and the amount of any penalty *de novo*. *See* 28 U.S.C. § 2640(a)(6). On *de novo* review, "the court must consider both whether the penalty has a sufficient basis in law and fact and whether Customs provided all process required by statute and regulations." *United States v. Santos*, 36 CIT __, __, 883 F. Supp. 2d 1322, 1326 (2012). In reaching its determination, the court "may look beyond the complaint if necessary to 'determine the amount of damages or other relief' or 'establish the truth of an allegation by evidence.'" *Id.* at __, 883 F. Supp. 2d at 1327 (quoting USCIT R. 55(b)).

Since the Clerk has entered default against Santos, the court accepts as true all well-pled factual allegations in the Government's Complaint. *See United States v. Callanish Ltd.*, Slip Op. 10-124, 2010 WL 4340463, at *3 (CIT Nov. 2, 2010); USCIT R. 8(c)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Entry of default does not admit legal claims. Thus, the court independently assesses whether the unchallenged facts give rise to a legitimate cause of action. *Callanish Ltd.*, 2010 WL 4340463, at *3; *Santos*, 36 CIT at __, 883 F. Supp. at 1326.

## BACKGROUND

The Government has filed a one-count complaint against Santos, and the court accepts the following factual allegations as true. During the period in question, Mr. Santos was an individually licensed customs broker operating as a corporation named Alejandro Santos, CHB.[2] Compl. ¶ 4. On January 14, 2008, Santos filed Entry Number BTN-00022126. *Id.* ¶ 6. The

---

[2] Customs brokers include all persons granted a valid customs broker license. 19 U.S.C. § 1641(a)(1). Both individuals and corporations are eligible to receive customs broker licenses. *Id.* § 1641(b)(2)–(3). In this case, Mr. Santos was individually licensed and operated as the sole licensed broker at Alejandro Santos, CHB (a corporation, also licensed as a customs broker). Compl. ¶¶ 3–4.

entry summary represented that the imported merchandise was "Fats of Bovine Animals, OT, Harmonized Tariff Schedule 1502.00.0060" and identified Santos as the importer of record and ultimate consignee. *See id.*; Default J. Mot., Decl. of Liza Lopez at Exs. 1–2. On January 18, 2008, Santos filed Entry Number BTN-00022589 and made the same representation regarding the content of the imported merchandise. Compl. ¶ 7. Despite Santos' representations, the commercial invoices for both entries revealed that the imported product was actually Co-Ral Flowable, a pesticide.[3] *Id.* ¶ 8. The Government submits that Co-Ral Flowable is classifiable under subheading 3808.91.2500 of the Harmonized Tariff Schedule of the United States ("HTSUS").[4] *Id.*

Other than the classification discrepancy, Customs found additional flaws in the documentation pertaining to the entries in question. First, Santos claimed duty-free treatment under the North American Free Trade Agreement ("NAFTA") even though he did not possess the requisite certificates of origin. *Id.* ¶ 12. Second, the commercial invoices that Santos presented to U.S. Customs and Border Protection ("Customs") were not in English and did not include the duty rate and classification of the imported merchandise. *Id.* ¶ 11. Third, Santos did not have an Environmental Protection Agency ("EPA") Form 3540-1 (Notice of Arrival of Pesticides and Devices) on file even though Co-Ral Flowable was a pesticide. *Id.* ¶ 13. Lastly, because Santos did not have that form and did not classify the merchandise as a pesticide,

---

[3] The Government pled that "the *invoices revealed* that the product imported was Co-Ral Flowable," not that the product imported was in fact Co-Ral Flowable. *See* Compl. ¶ 8 (emphasis added). This is likely because Customs did not inspect the merchandise. Nonetheless, Customs did not inspect the merchandise because Santos never redelivered the items following a timely notice to redeliver. *See* Default J. Mot., Decl. of David Pulkrabek ¶¶ 8–9. Under those circumstances, the court accepts the uncontested information on the commercial invoices as proof of the actual contents of the entries.

[4] Tariff classifications involve questions of law that the court does not accept as true. However, the issue here is not whether Co-Ral Flowable is properly classified under 3808.91.2500, but whether Co-Ral Flowable, a pesticide, was misclassified as animal fat.

Customs was unable to detain and inspect the merchandise as it normally would for shipments of pesticides. *Id.* ¶ 14.

On the basis of the foregoing alleged violations, Customs transmitted pre-penalty and penalty notices to Santos on December 9, 2010 and April 26, 2011, respectively. *Id.* ¶ 16. Both notices informed Santos that the penalty totaled $30,000.[5] *See* Default J. Mot., Decl. of Liza Lopez at Exs. 3–4. Santos did not respond to Customs' notices and has not paid any of the assessed penalty. *See* Compl. ¶¶ 16–17. On January 11, 2013, the Government commenced a civil enforcement action against Santos.

Santos waived formal service of process but has not otherwise appeared in the action or responded to the Complaint. *See* Waiver of Service of Summons, ECF No. 4. The Clerk entered default on April 11, 2013 and the Government later moved for default judgment. *See* Clerk's Entry of Default, ECF No. 6. Santos did not respond to the Government's motion.

## DISCUSSION

19 U.S.C. § 1641(d)(1)(C) permits monetary penalties "if it is shown that the broker . . . has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision." The amount of any penalty assessed under § 1641(d)(1)(C) may not exceed $30,000, and Customs may not assess a penalty unless it provides all statutorily-mandated process. *Id.* § 1641(d)(2)(A). As set forth below, the Government sufficiently pled facts establishing multiple regulatory violations, Customs complied with the mandatory notification procedures, and Customs' $30,000 monetary penalty was reasonable under the facts. Default judgment is, thus, appropriate.

---

[5] The cover letter accompanying the penalty notice and demand for payment incorrectly listed $20,000 as the contemplated penalty. Default J. Mot., Decl. of Liza Lopez at Ex. 4. However, the penalty notice itself—and all documents associated with the pre-penalty notice—listed $30,000 as the actual amount at issue. *Id.* at Exs. 3–4.

**I.     The Government has shown that Santos violated multiple regulations "enforced by the Customs Service," in derogation of 19 U.S.C. § 1641(d)(1)(C)**

### A. 19 C.F.R. § 152.11

19 C.F.R. § 152.11 requires classification of merchandise in accordance with the HTSUS. Entry summaries for Entry Numbers BTN-00022126 and BTN-00022589 described the imported merchandise as "Fats of Bovine Animals, OT," classifiable under HTSUS 1502.00.0060. Compl. ¶¶ 6–7; Default J. Mot., Decl. of Liza Lopez at Exs. 1–2.  The commercial invoices, however, revealed that the imported merchandise was Co-Ral Flowable, a pesticide classifiable as HTSUS 3808.91.2500.  Compl. ¶ 8; Default J. Mot., Decl. of Liza Lopez at Ex. 6.  Accepting the Government's allegations as true, Santos violated 19 C.F.R. § 152.11 by misclassifying merchandise.

### B. 19 C.F.R. §§ 12.112–.113

19 C.F.R. § 12.112(a) requires that importers of pesticides submit a Form 3540-1 Notice of Arrival to the EPA Administrator "prior to the arrival of the shipment in the United States." The EPA then completes the Notice of Arrival and returns it to the importer or his agent. *Id.* When the pesticides arrive, the importer or his agent must present the port director with the completed Notice of Arrival for further analysis. *Id.* § 12.113(a).  If the importer or his agent does not present a completed Notice of Arrival, the port director will detain the pesticides pending receipt of that form. *Id.* § 12.113(b)–(c).

The Government alleges that Co-Ral Flowable is a pesticide and that Santos did not have an EPA Form 3540-1 on file for the two entries in question.  Compl. ¶¶ 8, 13.  Santos, the broker and importer of record, thus violated 19 C.F.R. § 12.112 by failing to obtain a required EPA

form.[6]  By extension, Santos also violated 19 C.F.R. § 12.113 by not presenting a completed Notice of Arrival upon arrival of the Co-Ral Flowable.

### C.  19 C.F.R. § 111.32

Brokers violate 19 C.F.R. § 111.32 when they file "any document, affidavit, or other papers, known by such broker to be false."  Santos possessed commercial invoices identifying Entry Numbers BTN-00022126 and BTN-00022589 as Co-Ral Flowable, but submitted entry summaries representing that the imported merchandise was animal fat.  *See* Compl. ¶¶ 8, 10.  Because Santos possessed the invoices, the court accepts the Government's allegation that Santos knowingly submitted false documents in violation of § 111.32.  *See id.* ¶ 10 (alleging knowledge and minimal facts supporting inference of knowledge); *see also* USCIT R. 9(b) (noting that "knowledge . . . may be alleged generally").

### D.  19 C.F.R. §§ 141.86; 141.90

Customs' regulations establish certain requirements for commercial invoices accompanying imported merchandise.  19 C.F.R. § 141.86(d) requires that an invoice be in English or contain an attached English translation.  Additionally, pursuant to § 141.90(b), importers and brokers must include on commercial invoices the appropriate duty rate and classification of the imported merchandise.[7]

The commercial invoices accompanying Entry Numbers BTN-00022126 and BTN-00022589 were not in English.  Compl. ¶ 11; Default J. Mot., Decl. of David Pulkrabek at Ex. 5.

---

[6] 19 C.F.R. § 12.112(b) exempts from the Notice of Arrival requirement certain chemicals "not shown on the Index of Pesticide Products located in the Environmental Protection Agency's handbook."  Co-Ral appears on the Index of Pesticide Products and is, thus, not an exempted chemical.  *See* Envtl. Protection Agency, *Index of Pesticide Prods.* 225, *available at* http://www.epa.gov/oppfead1/safety/healthcare/handbook/Index2.pdf.

[7] The 2008 version of 19 C.F.R. § 141.90 referenced only importers, not customs brokers.  *See* 19 C.F.R. § 141.90 (2008); *Santos*, 36 CIT at __, 883 F. Supp. 2d at 1328 n.6.  The intervening change is immaterial here, though, because Santos was also the importer of record for Entry Numbers BTN-00022126 and BTN-00022589.  Moreover, Customs had previously informed Santos that commercial invoices must be notated with the pertinent duty rate and classification.  Default J. Mot., Decl. of David Pulkrabek ¶ 16.

The invoices also did not identify the goods' duty rate and classification.  Compl. ¶ 11; Default J. Mot., Decl. of David Pulkrabek at Ex. 5.  Accordingly, Santos violated 19 C.F.R. §§ 141.86(d) and 141.90(b).

### E. 19 C.F.R. § 111.29

"Each broker must exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker." 19 C.F.R. § 111.29(a).  Due diligence is defined as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Black's Law Dictionary* 523 (9th ed. 2009).

According to the Government's complaint, Entry Numbers BTN-00022126 and BTN-00022589 entered duty-free pursuant to NAFTA.  Compl. ¶ 12.  However, Santos did not have a Certificate of Origin for either entry.  *Id.*  Because Santos lacked a Certificate of Origin, he either should not have claimed NAFTA preferential treatment on the entry summaries, or should have corrected the entries and paid any increased duties for a non-preferential importation.  *See* Default J. Mot., Decl. of David Pulkrabek ¶ 14.  Santos took neither of those steps, demonstrating that Santos failed to exercise the due diligence required by 19 C.F.R. § 111.29.

### F. 19 C.F.R. § 111.28

Brokers "must exercise responsible supervision and control over the transaction of the customs business." 19 C.F.R. § 111.28 (citation omitted).  Responsible supervision and control is defined as "that degree of supervision and control necessary to ensure the proper transaction of the customs business of a broker, including actions necessary to ensure that an employee of a broker provides substantially the same quality of service in handling customs transactions that

the broker is required to provide." *Id.* § 111.1.  Customs must consider ten non-exclusive factors before finding that a broker failed to exercise responsible supervision and control.  *See United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1383 (Fed. Cir. 2009) (partially vacating court's opinion because Customs did not consider all ten factors).

The Government pled that "[t]he totality of the violations associated with" the two entries in question "and the 10 factors identified in 19 C.F.R. § 111.1, demonstrate that Mr. Santos failed to exercise responsible supervision and control over these transactions."  Compl. ¶ 15.  Other information before the court corroborates the Government's assertion that Customs considered all ten factors before finding a violation of 19 C.F.R. § 111.28.  Default J. Mot., Decl. of David Pulkrabek ¶¶ 17–26 (applying the ten factors in 19 C.F.R. § 111.1 to these facts), Decl. of Liza Lopez ¶¶ 17–28 & Ex. 5 (containing worksheet considering all ten factors, created by David Pulkrabek and reviewed with approval by Liza Lopez).  Accepting the Government's findings as true, Santos violated § 111.28 by, *inter alia*, inadequately training and supervising employees on the lawful importation of pesticides and other requirements governing entry documents.

## II.    Customs complied with relevant notification procedures

The court also finds that Customs exhausted administrative remedies before bringing this action.  19 U.S.C. § 1641(d)(2)(A) requires that Customs "serve notice in writing upon any customs broker to show cause why the broker should not be subject to a monetary penalty" under § 1641.  *Id.*  In that notice, Customs must "advise the customs broker of the allegations or complaints against him and . . . explain that the broker has a right to respond to the allegations or complaints in writing within 30 days of the date of the notice."  *Id.*; *see also United States v. Robert E. Landweer & Co.*, 36 CIT __, __, 816 F. Supp. 2d 1364, 1374–75 (2012) (finding that

Customs must inform broker of specific regulations violated).  Customs then issues a written decision, considering any timely responses from the recipient of the pre-penalty notice.  19 U.S.C. § 1641(d)(2)(A).  After transmission of the penalty notice, a broker against whom a penalty has been assessed has a reasonable opportunity to seek remission or mitigation of the penalty under 19 U.S.C. § 1618.  *Id.*

The pre-penalty notice in this case informed Santos of his rights, enumerated the regulations that Santos allegedly violated, and set forth the material facts giving rise to those violations.[8]  Default J. Mot., Decl. of Liza Lopez at Ex. 3.  Customs' subsequent penalty notice informed Santos that he had sixty days to file a petition for relief under 19 U.S.C. § 1618.  *Id.* at Ex. 4.  Santos neither responded to the pre-penalty statement nor sought relief under § 1618.  As a result, Customs complied with all relevant procedures under 19 U.S.C. § 1641.

### III.     The $30,000 monetary penalty was reasonable

The court also finds that the assessed penalty was reasonable.  Customs imposed a collective penalty of $30,000 for the regulatory violations set forth above.  Although 19 U.S.C. § 1641 counsels that penalties under that statute may not "exceed $30,000 in total," the statute does not contemplate a particular framework for assessing penalties within that range.  Because Customs' $30,000 penalty is unchallenged, the court will uphold the penalty if it is reasonable and factually supported.  *See Santos*, 36 CIT at __, 883 F. Supp. 2d at 1330.

The $30,000 penalty assessed against Santos satisfies that standard.  Santos violated multiple regulations when importing Entry Numbers BTN-00022126 and BTN-00022589.

---

[8] Customs could have been clearer when enumerating the material facts establishing a violation of 19 U.S.C. § 1641.  Though Customs provided a detailed overview, Customs did not explicitly list facts giving rise to certain regulatory violations.  For instance, Customs did not expressly state that Santos failed to submit invoices in English and to notate the invoices with the duty rate and classification.  Nonetheless, Customs informed Santos of violations of "19 CFR 141.86 (Contents of invoice and general requirements)" and "19 CFR 141.90 (Notation of tariff classification and value on invoicing)."  *See* Default J. Mot., Decl. of Liza Lopez at Ex. 3.  Customs provided similar statements for all regulatory violations at issue here.  *Id.*  That notice was sufficient, especially where Santos had received prior warnings about similar violations and does not claim a lack of notice.

Court No. 13-00025                                                                                                      Page 10

Further, Santos had previously committed some of the same violations at issue in this case.  For example, Customs informed Santos as early as 2007 that invoices must be in English and notated with a duty rate and classification.  *See* Default J. Mot., Decl. of David Pulkrabek ¶¶ 15–16 & Exs. 7–8.  Santos' failure to take corrective action, even after having been advised of prior violations, makes the subsequent violations particularly egregious.

In addition to being quantitatively numerous, the violations supporting the penalty were qualitatively significant.  Santos misclassified a pesticide, thereby preventing the EPA from considering whether to allow entry of a potentially dangerous substance.  Violations with possible health and safety implications warrant a stiffer sanction.

## CONCLUSION AND ORDER

For the reasons set forth above, the Government's Motion for Default Judgment is hereby granted and Customs' $30,000 penalty is upheld.  Accordingly, judgment is entered against Santos in the amount of $30,000.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated:   December 26, 2013
            New York, New York